475 So.2d 1082 (1985)
Albert J. HUDDLESTON, Robert D. Martinez and His Wife, Mardel W. Martinez, Mardel W. Martinez, Jacques E. Lauer, and His Wife, Alva N. Lauer, Margaret Louise Huddleston, Kevin Doyle Huddleston, Lindsay Madeline Huddleston and Alicia St. John Huddleston
v.
BOSSIER BANK AND TRUST COMPANY.
No. 85-C-0578.
Supreme Court of Louisiana.
September 10, 1985.
Peter J. Butler, Aubrey B. Hirsch, Jr., M. Shawn McMurray, Butler, Heebe & Hirsch, New Orleans, for plaintiff-applicant.
Robert Mathis, New Orleans, for defendant-respondent.
*1083 BLANCHE, Justice[*].
Plaintiffs filed this suit alleging that the interest on a promissory note issued by Bossier Bank and Trust Company was usurious. The promissory note was held not to be usurious by the trial court. However, the trial court did award plaintiffs $9,250.00 in attorney's fees. The Court of Appeal, 463 So.2d 1336, also found that the promissory note was not usurious but disallowed the award of the attorney's fees to plaintiffs. We granted writs, 467 So.2d 528, to consider whether the promissory note provided for usurious interest.
Albert J. Huddleston was a one-third owner in an apartment complex known as the "Malibu Apartments." After a disagreement with his co-owners, Huddleston filed to partition the apartment complex by licitation. After two unsuccessful sales, a third auction was advertised for October 25, 1978. Prior to this sale, on October 3, 1978, defendants agreed to make a discounted loan to plaintiffs so that they could purchase the apartments. Huddleston executed a collateral mortgage which was pledged to secure a hand note in the amount of $894,083.03 payable to Bossier Bank and Trust Company with interest at 10% from maturity and due in 90 days. The proceeds of the loan were as follows:

Cash Proceeds $825,000.00
Life Insurance Premium 19,014.00
Precomputed Interest 21,748.61
Loan Fee (Points) 28,320.42
 ___________
Total $894,083.03

When the note became due on January 1, 1979, Huddleston was unable to pay the entire balance. After negotiations, Bossier agreed to renew the note for an additional 90 days on the condition Huddleston would pay $39,195.30. Bossier further required that as to the renewal note Huddleston was also to pay a renewal fee plus precomputed interest as a condition of the loan. The proceeds of the second note were distributed as follows:

Balance due on October 3,
1978 note: $894,083.03
Less Payment 39,195.40
 ___________
Balance to Renew $854,887.73
Fees to Renew 17,446.69
Precomputed Interest 33,166.63
 ____________
Amount of New Note $905,501.05

When the second note matured on April 3, 1979, Huddleston executed a third note extending the due date for an additional 91 days. This final note matured on July 2, 1979 and remained unpaid until November 12, 1979, at which time Huddleston tendered payment of $877,173.39. Bossier rejected this amount asserting that the correct payout amount was $911,417.03. After negotiations between the respective parties' attorneys, Bossier accepted the amount tendered by Huddleston. However, as a result of this disagreement, Huddleston incurred attorney's fees of $9,250.00.
On December 19, 1979, plaintiffs filed this suit alleging that the October 3, 1978 promissory note for $894,083.03 was usurious, and that since the note was usurious, all charges in connection with the use of the money should be returned. Huddleston also alleged tortious conduct in regard to Bossier refusing to accept the amount tendered on the note which matured July 2, 1979. He sought to recover all charges incurred for the use of the money loaned by Bossier as well as $9,250.00 in attorney's fees. Huddleston later withdrew his demand for the return of the fees incurred on the final note but maintained his demand for attorney's fees.
At the time the October 3, 1978 note was executed, the interest rate on a discounted loan could exceed 8% annually provided that the note did not bear more than 8% interest after maturity. La.C.C. art. 2924. The note issued by Bossier provided for 10% interest from maturity. Therefore, as the lower courts correctly found, the *1084 October 3, 1978 note as written violated Article 2924.
Plaintiffs contend that since the note is usurious on its face all interest paid on the note should be forfeited. Defendant, however, argues that the 10% figure was placed in the note by clerical error. They further contend that the interest paid should not be forfeited simply because the note was usurious on its face where the interest actually collected was not usurious. Plaintiffs rely on Grunewald v. Bartholomew, 269 So.2d 274 (La.App. 4th Cir. 1972) for their contention that usury is determinable solely from the face of the instrument. In Grunewald, a loan of $5000 was made to defendant after he signed a discounted note payable on demand, with a face amount of $5,750.00 bearing 8% interest from maturity until paid. However, unlike the note issued by Bossier, the note in Grunewald, was a demand note payable from the date of its issuance. The court further found that the rule which permitted capitalized interest plus legal interest from maturity contemplated an interval of time between the date of execution and the date when the interest from maturity became applicable. Since a demand note matures the day it is issued, the Court found that the note actually provided for interest from the date of its issuance rather than from maturity and that the interest paid on the note exceeded the maximum amount allowed by law. Moreover, the parties in Grunewald, did not contend that the note contained an error as to the interest rate charged or as to the amount of interest actually paid. Therefore, under the particular facts of Grunewald, usury could have been determined from the face of the instrument. Likewise, in Paulat v. Pirello, 353 So.2d 1307 (La. 1977) the lender actually accepted usurious interest where the note itself was not usurious on its face. This Court stated that Grunewald, "under its facts is a correct statement of the law" but that it did not "purport to legitimize, as non-usurious, payments exacted after execution of a note not usurious on its face, when such subsequent payments in fact and by agreement of the parties constitute usurious interest." Thus, in Paulat, usurious interest was actually collected by the lender.
The testimony at trial by Bossier's president, Mr. McKigney, and by Bossier's notary, Mr. Herzog, strongly indicated that the 10% figure was placed in the note by clerical error and that it was the intent of the parties that the note bear 8% interest from maturity rather than 10% interest from maturity. In Britton v. Myles, 9 So.2d 50 (La.App. 2d Cir.1942), the plaintiff sought to reform the terms of a credit deed as to the rate of interest and price. In holding for plaintiff, the court stated:
... when it is made clearly to appear that through fraud or error the written instrument has been made to express a different purpose from that which the parties had agreed on and intended to embody therein, such mistake may be corrected, and the writing may be reformed to express the real intention of the parties. 9 So.2d at 54.
Likewise, in Prejean v. Richard, 158 So. 693 (La.App. 1st Cir.1935), the Court stated:
Equity may reform and correct even contracts unambiguous on their face on clear proof that, through fraud and error, the written instrument has been made to express a different purpose from that which the parties had agreed on and had intended to embody therein; but to support relief there must be clear proof of the antecedent contract and of the error in committing it to writing. 158 So.2d at 695.
Furthermore, this Court in Karmgard v. Southland Mortgage and Title Company, 341 So.2d 1109 (La.1977), allowed the reformation of a discounted note which incorrectly stated the amount of a final installment payment as $43,400 when the evidence showed that the parties intended to state $35,000 as the amount of the last payment. We therefore conclude that the lower court was correct in holding that where the note became usurious on its face by virtue of a clerical error, and where the *1085 holder neither collected nor intended to collect usurious interest the legal interest collected should not be forfeited.
Plaintiffs also argue that even if the note is not usurious on its face that Bossier collected usurious interest from plaintiffs. The October 3, 1978 loan provided for $21,748.61 in precomputed interest. However, as stated before, this was a discounted loan and the amount of discounted interest may exceed 8% annually provided that the note does not bear more than 8% interest after maturity. La.C.C. art. 2924; Grunewald v. Bartholomew, supra; Paulat v. Pirello, supra. Therefore, the precomputed interest charged on the October 3, 1978 loan was not usurious. Plaintiffs further contend that the $17,446.69 payment made at the time the October 3, 1978 note was renewed was actually usurious interest charged on the first note. However, the testimony by Mr. McKigney indicated that this amount was a renewal fee and would not have been charged had the note been paid in full at that time. The agreement to renew was a separate contract which arose when plaintiffs sought to renew the loan for another 90 days. The lower courts were thus correct in holding that the $17,446.49 fee paid by Huddleston was not interest on the first note but was consideration for renewing that note.
Plaintiffs finally contend that the Court of Appeal was in error in reversing the award of attorney's fees to plaintiffs. The trial court found that plaintiffs would not have incurred the attorney's fees if Bossier had accepted the amount of money tendered by Huddleston on the final note. Attorney's fees are not allowed except where authorized by statute or contract. General Motors Acceptance Corporation v. Meyers, 385 So.2d 245 (La.1980). Plaintiffs have not stated any statutory or contractural basis for recovery of attorney's fees. However, plaintiffs argue that the award of $9,250.00 was not actually attorney's fees but rather damages for refusing to accept the amount tendered by Huddleston. The final note matured on July 2, 1979 and payment was not attempted by Huddleston until November 12, 1979. Because of the interval of time between the maturity of the note and the attempted payment, Bossier believed they were entitled to additional interest. This was a reasonable basis upon which to refuse acceptance of the lesser amount tendered by plaintiffs. Therefore, the Court of Appeal was correct to deny recovery of attorney's fees.

DECREE
For the reasons assigned above, the judgment of the Court of Appeal is affirmed.
AFFIRMED.
DIXON, C.J., dissents.
CALOGERO, J., dissents and assigns reasons.
LEMMON, J., dissents, believing that interest should be forfeited under La.R.S. 9:3501.
CALOGERO, Justice, dissenting.
R.S. 9:3501 provides that any contract for the payment of interest in excess of that authorized by law shall result in the forfeiture of the entire interest so contracted. If an assertion of clerical error can obviate the terms of this very precise statute then the statute doesn't really mean what it says. For these reasons I dissent.
NOTES
[*] Honorable Melvin A. Shortess served as Justice Ad Hoc in place of Justice Jack Crozier Watson, recused.